UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACQUE OJADIDI,<br>Plaintiff,<br>v.<br>ROBINHOOD MARKETS, INC.,<br>Defendant. | No. 2:26-cv-0304-DC-CKD (PS)<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff Jacque Ojadidi proceeds without counsel against defendant Robinhood Markets, Inc., and asserts trademark infringement, unfair competition, and related claims. This case is referred to the undersigned by operation of Local Rule 302(c)(21) pursuant to 28 U.S.C. § 636(b)(1). Defendant Robinhood Markets, Inc., moves to dismiss plaintiff's first amended complaint ("FAC") under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff opposed dismissal of the FAC and filed a motion for leave to file a second amended complaint. The court previously found these motions suitable for decision without oral argument under Local Rule 230(g). (ECF No. 23.) For the reasons set forth below, defendant's motion to dismiss should be granted and plaintiff's motion for leave to file a second amended complaint should be denied.

**I. Background**

Plaintiff filed this action without counsel on February 4, 2026, asserting claims on behalf of himself and purportedly on behalf of Robinhood Markets, Inc., as owner and President. (ECF

No. 1.) On February 25, 2026, plaintiff filed a notice of voluntary dismissal of the claims of plaintiff Robinhood News Inc. from this action.[1] (ECF No. 5.) Plaintiff filed the operative first amended complaint (FAC) on March 2, 2026, seeking monetary damages and declaratory and injunctive relief. (ECF No. 7.)

Under the FAC's allegations, plaintiff is the sole owner, President, CEO, and creator of Robinhood News Inc. and all intellectual property owned by Robinhood News, Inc. (FAC, ¶ 1.) Robinhood News is a small online news and commentary platform. (Id., ¶ 6.) Plaintiff alleges he adopted and began using the name ROBINHOOD NEWS in 2020 for celebrity news, political commentary, and sports coverage. (Id., ¶¶ 7, 22-23.)

Defendant is a financial services company. (FAC, ¶ 7.) On December 19, 2023, defendant filed a Notice of Opposition to the application of Robinhood News Inc. concerning the marks ROBINHOOD CELEBRITY and ROBINHOODFANS (TTAB Opposition). (FAC, ¶ 8; ECF No. 11-6.) Plaintiff alleges defendant's enforcement is "selective" and that non-party Robin Hood Foundation has refused to disclose third-party correspondence with defendant that would show coordination, selective enforcement, or other wrongdoing by defendant. (FAC, ¶¶ 34-47.)

Plaintiff further alleges that in 2025, defendant began expanding into sports and celebrity content, which constituted infringement and foreclosed expansion. (FAC, ¶¶ 34, 41, 62.) In particular, plaintiff alleges defendant's expansion into sports and celebrity content creates a "reverse confusion" scenario where customers are likely to believe that plaintiff's independent platform is affiliated with, sponsored by, or approved by defendant, or that plaintiff is the infringer. (Id., ¶¶ 50-51.) Plaintiff initiated a negotiation with defendant to avoid further litigation and defendant responded to plaintiff's offer with a grossly inadequate and nominal offer, and then refused to engage in meaningful negotiations, which plaintiff alleges demonstrates bad faith, coercive tactics, and unclean hands. (Id., ¶¶ 52-56.)

[1] Plaintiff, as a non-attorney, may appear without counsel and represent himself in this action. However, that privilege is personal to him and does not allow him to pursue claims on behalf of Robinhood News, Inc. See Rowland v. California Men's Colony, Unit II Men's Advisory Council, 506 U.S. 194, 202 (1993) (The right to proceed without counsel "does not allow corporations, partnerships, or associations to appear in federal court otherwise than through a licensed attorney.")

The operative FAC pleads nine "counts" set forth as follows:

Count 1: Declaratory Judgment of Non-Infringement (28 U.S.C. §§ 2201-2202)

Count 2: Federal Trademark Infringement (15 U.S.C. § 1114)

Count 3: Unfair Competition/ False Designation of Origin (15 U.S.C. § 1125(a))

Count 4: Cyberpiracy under the ACPA (15 U.S.C. § 1125(d))

Count 5: Intentional Interference with Prospective Economic Advantage

Count 6: Violation of California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200 et seq.)

Count 7: Declaratory Judgment regarding Robin Hood Foundation Communications

Count 8: Declaratory Judgment of Bad Faith and Unclean Hands

Count 9: California False Advertising Law

(ECF No. 7 at 27-37.)

Defendant filed the motion to dismiss on May 13, 2026, seeking dismissal with prejudice of the FAC in its entirety for failure to state a claim. (ECF No. 11.) Defendant argues plaintiff lacks standing to assert the trademark claims and that each claim is also independently deficient. (ECF No. 11-1.) The motion to dismiss is fully briefed with plaintiff's opposition and defendant's reply. (ECF Nos. 13, 16.)

Plaintiff filed the motion for leave to file a second amended complaint (SAC) on June 8, 2026. (ECF No. 19.) The proposed SAC similarly asserts nine grounds for relief, labeled as causes of action rather than counts. (Id. at 16-19.) Plaintiff alleges a formal assignment transferring all rights, title, and interest in the trademarks from Robinhood News Inc. to himself has cured any technical standing defect because he is now the sole owner of record and has standing to enforce the marks. (Id. at 14.) The motion for leave to amend is fully briefed with defendant's opposition and plaintiff's reply. (ECF Nos. 21, 22.)

## II. Legal Standards

### A. Dismissal Under Rule 12(b)(6)

Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure may be warranted for "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a

cognizable legal theory.” Balistreri v. Pacifica Police Dep’t, 901 F.2d 696, 699 (9th Cir. 1990). In evaluating whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1989).

**B. Leave to Amend**

When a party may not amend as a matter of course, that party “may amend ... only with the opposing party’s written consent or the court’s leave.” Fed. R. Civ. P. 15(a)(2). Courts should freely give leave to amend when justice so requires.” Fed. Civ. R. 15(a)(2). In deciding whether to grant or deny leave to amend, courts in the Ninth Circuit consider the following factors: “(1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment, and (5) whether plaintiff has previously amended its complaint.” Ascon Properties, Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989) (citation omitted); see also Foman v. Davis, 371 U.S. 178, 182 (1962). Absent prejudice or a strong showing of another factor, there exists a presumption in favor of granting leave to amend. See Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003).

**III. Discussion**

**A. Standing**

Defendant argues plaintiff, as an individual, lacks standing to assert claims based on trademark rights belonging to Robinhood News Inc. (ECF No. 21 at 7-11.) “To satisfy Article III's standing requirements, a plaintiff must show (1) she has suffered an ‘injury in fact’ that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.” Bernhardt v. County of Los Angeles, 279 F.3d 862, 868-69 (9th Cir. 2002) (quoting Friends of Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180-81 (2000).

“As with all questions of subject matter jurisdiction except mootness, standing is determined as of the date of the filing of the complaint.... The party invoking the jurisdiction of

the court cannot rely on events that unfolded after the filing of the complaint to establish its standing." Wilbur v. Locke, 423 F.3d 1101, 1107 (9th Cir. 2005), abrogated on other grounds by Levin v. Com. Energy, Inc., 560 U.S. 413 (2010). Here, the record indicates that after plaintiff filed the operative FAC on March 2, 2026, trademarks discussed in the complaint were assigned from Robinhood News Inc. to plaintiff, personally, with a recording date of May 27, 2026. (ECF No. 24 at 2.)

Defendant argues plaintiff's post filing assignment cannot retroactively create standing. (ECF No. 21 at 7-11.) Citing a case from the Court of Appeals for the Federal Circuit, defendant argues a post-filing assignment cannot retroactively vest rights that did not exist when the complaint was filed. (ECF No. 16 at 9.) See Gaia Techs., Inc. v. Reconversion Techs., Inc., 93 F.3d 774 (Fed. Cir.), amended on reh'g in part, 104 F.3d 1296 (Fed. Cir. 1996) (concluding that an assignment of trademark rights executed on October 24, 1994, but made effective August 4, 1991, prior to the plaintiff's initial filing, is not sufficient to confer standing retroactively). In Gaia, the Federal Circuit reasoned that "[a]llowing a subsequent assignment to automatically cure a standing defect would unjustifiably expand the number of people who are statutorily authorized to sue." Id. at 780. Accordingly, "when a subsequent assignment is conjured to cure the defects of the initial complaint, many courts… have determined that this sort of agreement is not sufficient to confer standing retroactively." Hollis v. Render, No. CV 24-02292-MWF (BFMX), 2025 WL 2029815, at *3 (C.D. Cal. July 21, 2025) (citing Gaia and other collected cases).

Here, plaintiff did not have standing to assert trademark rights belonging to Robinhood News Inc. at the time he filed the operative FAC. The court need not determine whether plaintiff can cure this particular defect in the FAC because granting further leave to amend would be futile on other grounds. As discussed below, plaintiff's claims fail independently of any standing defect based on plaintiff's lack of ownership of trademark rights at the time he filed the FAC.

### B. Plaintiff's Claims

#### 1. Declaratory Judgment of Non-Infringement

Count 1 of the operative FAC seeks a declaration that plaintiff's individual use of the ROBINHOODNEWS mark does not infringe defendant's trademarks. (FAC, ¶¶ 66-69.)

Plaintiff's proposed SAC seeks to alter this claim to seek such a declaration as to his individual use of the marks ROBINHOODSPORTS, ROBINHOOD CELEBRITY, and ROBINHOOD FANS. (ECF No. 19 at 16.) Defendant argues there is no actual case or controversy between the parties regarding any of these marks because defendant has never initiated any proceeding against plaintiff regarding these marks. (ECF No. 16 at 14; ECF No. 21 at 14-15.)

A plaintiff seeking declaratory relief must demonstrate the following: (1) an "injury in fact" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical" and that is (2) "causal[ly] connect[ed]" and "fairly traceable" to "the conduct complained of" and "not the result of the independent action of some third party not before the court" and (3) "likely as opposed to merely speculative," such that "the injury will be redressed by a favorable decision." Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992) (cleaned up). A plaintiff must have a personal stake in the outcome and for each form of relief sought which exists at the time the complaint is filed and through all stages of the litigation. San Diego Cnty. Credit Union v. Citizens Equity First Credit Union, 65 F.4th 1012, 1023 (9th Cir. 2023).

Plaintiff does not allege defendant has accused him of any infringement. Plaintiff initially argued he can assert the claim in the FAC regarding the ROBINHOODNEWS mark because defendant filed the TTAB Opposition and sent a cease-and-desist letter to him. (ECF No. 13 at 24-25.) However, the TTAB proceeding is between defendant and Robinhood News Inc., which has been dismissed from this suit. Defendant states a settlement letter was sent to plaintiff because Robinhood News Inc. was no longer represented by counsel in the TTAB opposition proceeding at that time and there was no one else to communicate with on behalf of the company. (ECF No. 16 at 11.) Ultimately, plaintiff asserts he has standing to assert this claim for declaratory relief because defendant treated him as the real party in interest for the TTAB proceeding by making a settlement offer and offering to purchase his intellectual property portfolio for $5,000. (ECF No 13 at 16; ECF No. 22 at 5.)

Plaintiff's arguments fail because the existence of a pending TTAB proceeding does not create a live controversy for the requested declaratory judgment. See San Diego Cnty. Credit Union, 65 F.4th at 1026-27 ("if the only basis for a Declaratory Judgment is the threat or actual

filing of an opposition or cancellation proceeding against plaintiff's trademark registration in the Patent and Trademark Office, then this is not, by itself, sufficient to create an 'actual controversy' over trademark infringement" (citation omitted)). Plaintiff fails to show a live controversy as to whether his use of marks infringes defendant's trademarks. See id. at 1026-27. This ground for relief calls for an improper advisory opinion rather than an adjudication of present right upon established facts. See Ashcroft v. Mattis, 431 U.S. 171, 172 (1977).

**2. Federal Trademark Infringement**

Plaintiff's Count 2 as pleaded in the FAC similarly seeks "a declaration that his use of ROBINHOOD NEWS does not infringe any of defendant's registered marks and that defendant is not entitled to relief under 15 U.S.C. § 1114." (FAC, ¶¶ 70-72.) This ground for relief in the FAC requests another improper advisory opinion as plaintiff does not allege defendant has accused plaintiff of any infringement. See Ashcroft, 431 U.S. at 172. The TTAB proceeding challenges registrability, not infringement, and does not create an 'actual controversy' over trademark infringement. See San Diego Cnty. Credit Union, 65 F.4th at 1026-27.

Plaintiff's proposed SAC would assert this claim differently and seek both damages and injunctive relief under 15 U.S.C. § 1114 for reverse confusion as to a different mark—ROBINHOODSPORTS—alleging defendant's latter entry with overwhelming market power into the sports-entertainment space constitutes reverse confusion. (ECF No. 19 at 16.) However, trademark infringement claims under the Lanham Act require use of a mark "in commerce." See 15 U.S.C. § 1114(1)(a). The operative FAC makes clear that plaintiff's news platform "operates entirely on a non-commercial basis as a free public service for news, commentary, and entertainment." (FAC, ¶ 27.) Plaintiff's proposed SAC similarly alleges his "journalistic use falls outside the Lanham Act's reach" because his website generates no revenue and runs no advertisements. (ECF No. 19 at 4.)

Plaintiff argues in support of his motion for leave to amend that his noncommercial journalistic use is protected under Bosley Medical Institute, Inc. v. Kremer, 403 F.3d 672 (9th Cir. 2205). However, under application of the holding of that case, plaintiff's non-commercial use would not be protected because it is not "in connection with a sale of goods or services[.]" See id.

at 677. Plaintiff's alleged non-commercial use cannot support a trademark rights claim under § 1114, including under a reverse confusion theory. See Lodestar Anstalt v. Bacardi & Co. Ltd., 31 F.4th 1228, 1254 (9th Cir. 2022) ("[T]he Lanham Act generally limits enforceable trademark rights to bona fide uses that reflect genuine commercial endeavors rather than merely efforts to retain rights in a mark.").

**3. Unfair Competition/ False Designation of Origin**

Plaintiff's Count 3 in the FAC seeks declaratory relief that his personal use of ROBINHOOD NEWS does not violate 15 U.S.C. § 1125(a) "and that Defendant's claims to the contrary are without merit." (FAC, ¶¶ 73-75.) This claim fails because plaintiff does not identify any manner in which defendant has accused him of violating § 1125(a), or other facts that show a live controversy. Accordingly, this count in the FAC requests another improper advisory opinion. See Ashcroft, 431 U.S. at 172.

Plaintiff's proposed SAC asserts a different claim under 15 U.S.C. § 1125(a) for the third claim for relief, that "Defendant is using confusingly similar marks in commerce for related services, causing a likelihood of reverse confusion" as to plaintiff's senior use of the registered mark ROBINHOODSPORTS. (ECF No. 19 at 16.) As set forth above, plaintiff has not alleged use of the mark in connection with sale of goods or services. Absent use in connection with a commercial endeavor, he fails to plead a claim under 15 U.S.C. § 1125(a). See Lodestar Anstalt, 31 F.4th at 1254.

**4. Cyberpiracy/ ACPA**

Plaintiff's Count 4 in the FAC and his fourth claim for relief in the proposed SAC both purport to bring a claim for "Cyberpiracy under the Anticybersquatting Consumer Protection Act ("ACPA"). (FAC, ¶¶ 76-79; ECF No. 19 at 17.) Specifically, these causes of action seek another declaratory judgment that plaintiff's own domain name, robinhoodnews.com, does not violate the ACPA. (FAC, ¶¶ 76-79; ECF No. 19 at 17.) Plaintiff acknowledges that defendant has never asserted an ACPA claim against him (ECF No. 19 at 17) and does not explain how he is under any threat of ACPA liability or other facts that show a live controversy. This ground for relief requests another improper advisory opinion. See Ashcroft, 431 U.S. at 172.

**5. Intentional Interference with Prospective Economic Advantage**

Plaintiff's Count 5 in the FAC alleges he suffered actionable economic harm as a result of defendant's wrongful acts in the form of filing the TTAB opposition to block plaintiff's trademark applications and by responding to plaintiff with a grossly inadequate and nominal settlement offer. (FAC, ¶ 83.) Plaintiff alleges defendant has engaged in selective enforcement by tolerating numerous other third-party users. (Id.) Plaintiff's fifth claim for relief in the proposed SAC rests on similar allegations but omits the allegation about selective enforcement. (ECF No. 19 at 17.) Plaintiff further alleges he "had existing and prospective economic relationships with third parties, including investors, licensing partners, and advertisers, with a probable expectancy of economic benefit." (Id.)

"To prevail on a cause of action for intentional interference with prospective economic advantage in California, a plaintiff must plead and prove (1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) the defendant's intentional acts designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the defendant's acts." Reeves v. Hanlon, 33 Cal. 4th 1140, 1152, 95 P.3d 513, 520 n.6 (2004) (citation omitted). "[T]o meet [the third] element, a plaintiff must plead and prove that the defendant's acts are wrongful apart from the interference itself." Korea Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134, 1154 (2003). "In this regard, 'an act is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard.'" Reeves, 33 Cal. 4 at 1140 (quoting Korea Supply Co., 29 Cal.4th at 1158).

Plaintiff argues defendant's "bad-faith TTAB opposition constitutes an independently wrongful act." (ECF No. 22 at 5.) However, defendant's opposition to a trademark application cannot be an independently wrongful act in this context, as filing a TTAB opposition is a lawful activity expressly authorized by statute. See 15 U.S.C. § 1063. Plaintiff has not identified an independently wrongful act by defendant to support this claim.

////

### 6. California Unfair Competition Law (UCL)

Plaintiff's Count 6 alleges plaintiff has suffered economic harm as a result of defendant's unfair competition. (FAC, ¶¶ 87-92.) Specifically, plaintiff alleges defendant's "selective enforcement of its trademark rights" against plaintiff, while tolerating similar uses by others, together with its "coercive settlement conduct and bad-faith litigation tactics" constitutes a violation of California Business & Professions Code § 17200 et seq. (Id., ¶ 88.) Plaintiff's sixth claim for relief in the proposed SAC rests on similar allegations and additionally alleges plaintiff's injury includes "over $40,000.00 invested, blocked trademark applications, [and] lost opportunities[.]" (ECF No. 19 at 18.)

To bring a private action under California's UCL, Cal. Bus. & Prof. Code § 17200 et seq., a plaintiff must have: (1) "suffered injury in fact," and (2) "lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204; Kwikset Corp. v. Superior Court, 51 Cal. 4th 310, 322 (2011). The UCL defines "unfair competition" as "any unlawful, unfair or fraudulent business act or practice[.]" Cal. Bus. & Prof. Code § 17200.

Plaintiff fails to plead a cognizable unfair competition claim. Plaintiff's alleged economic injury is purely speculative as to any lost opportunities and he does not adequately allege how defendant's unlawful, unfair, or fraudulent activity caused his $40,000 expense. Defendant's alleged conduct in regard to the pending TTAB proceeding is not the type of conduct that is actionable under the UCL.

### 7. Declaratory Judgment regarding Robin Hood Foundation Communications

Plaintiff's count seven "seeks a declaratory judgment concerning non-party Robin Hood Foundation's communication about plaintiff's use of the ROBINHOOD NEWS mark." (FAC, ¶¶ 93-98.) Specifically, in both the operative FAC and proposed SAC, plaintiff "seeks a declaration regarding the significance of these communications and their impact on Defendant's claims." (Id., ¶ 98; ECF No. 19 at 18.)

This request is too vague and broad to be fit for declaratory judgment, as the court cannot understand what declaration plaintiff is seeking. It further appears there is no live controversy, as

Robin Hood Foundation is a third-party trademark owner that is not a party to this action. (See ECF No. 11-1 at 15-16; ECF No. 19 at 18.) This court cannot adjudicate the rights, obligations, or conduct of a non-party. See, e.g., Aetna Life Ins. Co. of Hartford, Conn. v. Haworth, 300 U.S. 227, 240-41 (1937) ("The controversy must… touch[ ] the legal relations of parties having adverse legal interests.").

**8. Declaratory Judgment of Bad Faith and Unclean Hands**

In Count 8 of the operative FAC, plaintiff seeks a declaration that defendant's enforcement efforts against plaintiff constitute bad faith and unclean hands. (FAC, ¶¶ 99-101.) As plaintiff acknowledges, bad faith and unclean hands are affirmative defenses and not causes of action. Defendant does not assert any claims against plaintiff and plaintiff does not allege other facts showing a live controversy. This count calls for an improper advisory opinion rather than an adjudication of present right upon established facts. See Ashcroft, 431 U.S. at 172.

**9. False Advertising**

Plaintiff's Count 9 alleges he suffered harm as a result of defendant's false and misleading advertising. (FAC, ¶¶ 102-108.) Specifically, plaintiff alleges defendant engaged in false or misleading advertising prohibited by California Business & Professions Code § 17500 by using the ROBINHOOD mark in connection with its prediction markets and sports entertainment content while simultaneously opposing plaintiff's use of the same mark for legitimate news and sports coverage. (Id., ¶¶ 103-04.) Plaintiff's ninth claim for relief in the proposed SAC rests on similar allegations and alleges specifically that defendant's use of the ROBINHOOD mark constitutes false advertising because it creates reverse confusion, misleading consumers into believing plaintiff's independent services are affiliated with defendant. (ECF No. 19 at 19.)

California's false advertising law prohibits the dissemination of statements that are "untrue or misleading" as to the nature or quality of defendant's goods or services and known to be so at least by the exercise of reasonable care. California Business & Professions Code § 17500. In order to state a false advertising claim, a plaintiff must show that members of the public are likely to be deceived. Kasky v. Nike, Inc., 27 Cal. 4th 939, 951 (2002), as modified (May 22, 2002). The plaintiff also must have suffered an injury in fact and lost money or property as a

result of the alleged false advertising activity. See Kwikset Corp., 51 Cal. 4th at 322.

As with the UCL claim, plaintiff's alleged economic injury is not adequately alleged. Plaintiff also has not identified any specific advertisement, promotional statement, or public communication by defendant that contains any false or misleading representation about the nature, characteristics, or qualities of any goods or services. Defendant's alleged use of its own federally registered marks in connection with its services is not an "untrue or misleading statement" within the meaning of California Business & Professions Code § 17500. Plaintiff has no cognizable false advertising claim.

**IV. Recommendation**

Plaintiff lacks standing to assert claims in the FAC and the FAC fails to state a claim. Plaintiff's proposed SAC also fails to state a claim upon which relief can be granted. Accordingly, defendant's motion to dismiss should be granted and the dismissal should be without further leave to amend. See Bonin v. Calderon, 59 F.3d 815, 845 (9th Cir. 1995) ("Futility of amendment can, by itself, justify the denial of a motion for leave to amend.").

For the reasons set forth above, IT IS RECOMMENDED as follows:

1. Defendant's motion to dismiss (ECF No. 11) be GRANTED and plaintiff's first amended complaint be dismissed without further leave to amend.
2. Plaintiff's motion for leave to file a second amended complaint (ECF No. 19) be denied.
3. The Clerk of Court be directed to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served on all parties and filed with the court within seven (7) days after service of the objections. Failure to file objections within the specified time may waive the right to appeal the District court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951

F.2d 1153, 1156-57 (9th Cir. 1991).

Dated: November 23, 2026

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

8 ojad26cv0304.mtd